FILED

UNITED STATES DISTRICT COURT
SANTA FE, NEW MEXICO

**UNITED STATES DISTRICT COURT
FOR THE
STATE OF NEW MEXICO**

FEB 0 6 2024

MITCHELL R. ELFERS
CLERK

Larry Marker

Petitioner

Vs.                              Case No.                    CV 24-118 KK

New Mexico House of Representatives

| | | |
|---|---|---|
| Eliseo Alcon | Miguel Garcia | Matthew McQueen |
| Anthony Allison | Joy Garratt | Tanya Mirabal Moya |
| Janelle Anyanonu | Yanira Gurrola | Rod Montoya |
| Gail Armstrong | Jason Harper | Kristina Ortez |
| Brian Baca | Joshua Hernandez | Cristina Parajón |
| John Block | Pamelya Herndon | Randall Pettigrew |
| Cynthia Borrego | Susan Herrera | Andrea Reeb |
| Cathrynn Brown | Dayan Hochman-Vigil | William Rehm |
| Micaela Cadena | Tara Jaramillo | Andrea Romero |
| Ambrose Castellano | D. Wonda Johnson | G. Andrés Romero |
| Kathleen Cates | Jenifer Jones | Patricia Roybal Caballero |
| Christine Chandler | T. Ryan Lane | Angelica Rubio |
| Gail Chasey | Raymundo Lara | Joseph Sanchez |
| Jack Chatfield | Derrick Lente | Debra Sariñana |
| Eleanor Chávez | Charlotte Little | Larry Scott |
| Art De La Cruz | Stefani Lord | Linda Serrato |
| Meredith Dixon | Tara Lujan | Nathan Small |
| Mark Duncan | Patricia Lundstrom | Reena Szczepanski |
| Candy Ezzell | Willie Madrid | Luis Terrazas |
| Joanne Ferrary | Alan Martinez | Elizabeth Thomson |
| Natalie Figueroa | Javier Martinez | James Townsend |
| Doreen Gallegos | Jimmy Mason | Harlan Vincent |
| Harry Garcia | Marian Matthews | Martin Zamora |

Respondents

Page **1** of **12**

**VERIFIED**
**EMERGENCY PETITION FOR WRIT OF QUO WARRANTO**
**AND**
**EMERGENCY REQUEST FOR PRELIMINARY INJUNCTION**

1-Petitioner as a Citizen, Voter and 2022 Candidate for NM Commissioner of

Public Lands files this Emergency Petition for Writ of Quo Warranto seeking

judicial action pursuant to and within the scope of the 'All Writs Act" Title 28

§1652 to determine the legal authority of each individual member of the New

Mexico House of Representatives elected in the November 8th 2022 NM General

Election to occupy office, perform legislative duties and exercise legislative

authority of that office. The requested preliminary injunction is limited to bills

passed in the Second Session of the 56th Legislature (2024 Regular Session) except

general appropriation bills or bills carrying an emergency clause.

**Background:**

2-The 2022 NM General election was illegally conducted using election equipment

that was not in compliance with State or Fed law. Petitioner prior to the 2022

election unsuccessfully sought judicial intervention on the merits of the matters

and issues of non-compliant election equipment. Proper notification and service

requirements were followed in each of those cases, therefore the Office of the NM

Attorney General has known of the issues of the instant matter for a significant

amount of time. NMAG has been served as per state law on each previous matters

Page **2** of **12**

relative to compliance of election equipment. Please see Case No. S-1-SC-39578 and Case No. 22-CV-784-KG-KRS.

3-Subsequent to the 2022 general election on Dec. 14th 2022 Petitioner did file in NM District Court case No.D-5O4-CV- requesting a Declaratory Judgment on the matter of non-compliant equipment used to conduct the 2022 NM General Election. The court unable to dismiss the cause of action after the initial hearing on the  of Petitioners standing, vacated the subsequent hearing, has thus far ignored Petitioners motion to include as Defendants additional State Officials and failed to act on a request for a scheduling conference. The actions of the State district court have effectively deprived Petitioner of the right to petition the court and access to a remedy, each of those are a violation of Petitioners rights protected under the first amendment of the Constitution of the United State.

4-The State of NM has failed to contradict the fact the equipment used to conduct the 2022 NM General Election was non-compliant and under state law illegal to use. Please see Exhibit A. attached.

**Issues of the Matter are Constitutionally Repugnant**

5-The 2022 General election was in fact conducted contrary to Federal and State election laws.

6-Petitioner has no other remedy at law to the matter of non-compliant election equipment and the question of the legal authority of the elected House members to hold the offices they now occupy.

7-New Mexico House Members are elected every two years, 69 of the 70 Representatives were illegally placed in office by the 2022 election that was conducted on non-compliant equipment. The instant request for judicial writ is derived from the undeniable fact of the matter that each of the subject NM House Members do not have the Constitutional right to hold the position of NM Representative due to the fact that the election of 2022 was conducted contrary to state and federal law.

8-The issue of illegitimately elected members of the NM House of Representatives bears the question of the legitimacy or legality of the laws passed by those legislators. Established law is clear, when the court determines that the Representatives were illegally elected and are holding offices they do not have the authority to hold. The Court does have jurisdiction and the authority to declare laws enacted by those Representatives stayed or ultimately void as repugnant to the constitution Please see Marbury v. Madison.

**Specific to Purpose of Writ:**

9-The purpose of Petitioners request for writ is have the court ascertain whether each of the Respondent House members is constitutionally and legally authorized to perform the duties of the office they currently occupy. Respondent House members are currently holding office in House Districts 1 through 70 excepting House District 59 held by an appointed member.

10-Petitioner is not requesting the Court remove Respondent Members from office within the instant cause of action. The interest of the citizens of the State of NM will be best served when elected officials are held accountable and the rights of the Citizens are protected.

**Essential Elements required are presented in Petition for Writ:**

11-The four essential elements required for a writ specific to a writ for quo warranto are present in the instant matter

12-An office created by the Constitution is occupied by a private person who lacks authority to do so. The offices in question are within the scope of a Petition for the requested writ.

13-The office in question involves significant duties related to public matters and

14-The duties of the office in question are also public in nature obviously the challenged offices fit within this category.

15-The Respondent House Member must be holding that office at the time the challenge is made. As stated Respondents are each currently illegally holding office as a member of the NM House of Representatives.

16-The essential elements required for any writ from a Federal Court are:

Courts jurisdiction, plausible allegations of violation of law and,

17-Requested relief would remedy the issue of the matter brought before the court.

18-The requested relief is within the scope of the "all writs act" Petitioner has standing to bring the matter as he has suffered a direct injury as a statewide candidate and voter subjected to an election held contrary to election laws. Petitioner is also a voter and a citizen of the state of NM with direct interest personally and professionally in laws being enacted or amended by the current Respondent Members. Petitioner is a soon to be ex independent oil and gas producer, current legal gun owner and citizen who is under an imminent invasion of multiple constitutionally protected rights, property rights and due process rights illegally infringed upon by laws that were not enacted within constitutional authority. A law enacted without constitutional authority is a clear threat to Petitioner the public interest and the integrity of Government

Page **6** of **12**

19-Respondents are illegally occupying offices and conducting legislative business without constitutional authority.

20-The requested remedy of the issuance of writ and the relief prayed for in the request for preliminary injunction will remedy the specific issues of the instant matter.

**Requested Writ and Injunctive Relief Impact on Public Interest:**

21-The issuance of a Writ for Quo Warranto and injunctive relief as requested does fit squarely within the four considerations of balance of interest, due process, practical considerations and judicial discretion.

22-The requested Petition for Writ is limited to the current members of the NM House of representatives. Each of Office of the NM House of Representatives is subject to election in the next NM general election in Nov. 2024.

23-If the Court did seek to remove Respondents from office Article IV Section 4 of the New Mexico Constitution provides a simple and efficient process to fill vacancies in the House.

24-Any reasonable person would agree issuance of a Writ of Quo Warranto with or without the process of filling a vacant house seat is miniscule compared to the broader consideration of the fact that the 2022 NM general election was held contrary to state law, each of the three branches of state government know beyond

any doubt of that fact and choose to do nothing to remedy or address the issue timely or otherwise.

25-The injunctive relief requested is limited to bills that will not be effective until May 15th of 2024. Maintaining the status Quo with the requested relief does serve justice and is clearly within the scope of due process and fairness as opposed to condoning the illegal actions of multiple state agencies and branches of the government of the state of NM relative to elections, election laws and a further invasion of rights protected by the first Amendment of the Constitution of the United States.

26-Any reasonable mind would view with deep concern the current state of affairs relative to the use of non-compliant voting equipment, NM Secretary of State illegally conducting elections. Elections conducted contrary to public law that place House members into office then without constitutional authority make laws while the states AG and Judicial system has demonstrate that they are uninterested or unwilling to provide any type of remedy timely or otherwise.

27-This entire matter could be framed a gross representation of state government incompetence, dereliction of duty and a violation of the oaths of office of each elected official involved directly or indirectly.

28-Obviously the balance of the equities is best served with Federal judicial intervention as requested by Petitioner.

29-The issuance of the requested Writ and injunctive relief as requested would ensure protection of citizen's rights and hold multiple elected state officials accountable.

**Specific to Preliminary Injunction:**

30-Petitioner is requesting issuance of a preliminary injunction pending the outcome of the Petition for Writ of Quo Warranto as requested by Petitioner.

31-The requested injunctive relief is to stay the effective date of bills enacted into law during the 2024 Regular Legislative Session.

32-The requested preliminary injunction is limited to bills passed in the Second Session of the 56th Legislature (2024 Regular Session) except general appropriation bills or bills carrying an emergency clause.

33-The effective date of subject laws is May 15th 2024, the preliminary injunction as requested will maintain the status quo pending the outcome of the instant Petition for Writ of Quo Warranto.

34-Petitioner is likely to succeed in this cause of action based on the merits of the underlying matter initiating his Petition for Writ of Quo Warranto. The state has

thus far in any other causes of action failed to show equipment compliance or even contradict Petitioners claim that the voting equipment used to conduct the 2022 general election was not compliant with state law, therefore illegal for use.

35-The Respondent House Members were placed into office with an election that was conducted contrary to law. Respondents do not have the right or constitutional authority to perform the duties of the offices they hold.

36-The Court will in all likelihood issue a writ of Quo Warranto, therefore irreparable harm will be suffered by Petitioner and the Citizens of the state of NM should the Court fail to grant injunctive relief as requested simply because the lawmakers do not have the right or authority to make laws that are to be effective May 15th 2024.

37-The State of NM would suffer no discernable ill effects with a stay of the subject laws as requested however the public would suffer the consequences of laws enacted by a body that made laws without right or constitutional authority.

**Conclusion and Review Remedy Requested:**

38-The issue of elections held within the guidelines of law and the legitimate constitutional authority of legislators to make laws is a basic tenant of our form of government especially considering our form of Government is Constitutional Republic with democratically elected representatives. We are a people governed by

our own consent, that consent is enumerated largely within our Constitution and laws made within the boundaries of that Constitution. The overall impact of this matter and this Federal Courts actions will have a direct and profound effect on the accountability of NM state government and the interest of its Citizens.

**To review requested relief:**

39-Petitioner is Petitioning this Court for a Writ of Quo Warranto to ascertain whether each of the Respondent House members is constitutionally and legally authorized to perform the duties of the office they currently occupy.

40-Petitioner is requesting a Preliminary Injunction to stay the effective date laws (bills) passed in the Second Session of the 56th Legislature (2024 Regular Session) except general appropriation bills or bills carrying an emergency clause pending issuance of Writ as requested.

41-Petitioner is requesting this Court declare invalid laws subjected to Injunctive relief upon issuance of the requested Writ.

Respectfully submitted:
Larry Marker
PO Box 3188
Roswell NM 88202
575-910-0300
larrym_gdc@hotmail.com

Petitioner Larry Marker swears under oath and threat of perjury that the statements and representations made within the body of this document are true and correct to the best of his knowledge. _____ Date _2-6-24_ )

# CERTIFICATION LAPSES

## 1    INTRODUCTION

The New Mexico Secretary of State (SOS) has failed in three respects to properly certify the election system:

1. The election system is not certified to the standard required by state law.
2. The testing lab hired by the SOS to certify the tabulators was not accredited at the time of certification, making their certification illegal and invalid.
3. The SOS has not certified the electronic pollbook system currently being used in New Mexico.

## 2    CERTIFICATION STATUTES

### 2.1    Federal Law

Federal law requires all states to comply with the mandatory sections of the Help America Vote Act (HAVA). HAVA outlines basic requirements that all electronic voting systems must meet and established the Election Assistance Commission (EAC) to assist states in oversight of their election systems.

The EAC has several functions:

1. Oversee the publication and maintenance of a document titled "Voluntary Voting System Guidelines" (VVSG), used as a standard for election system features and testing. The latest version is VVSG 2.0, which was adopted by the EAC in February 2021.
2. Accredit testing laboratories to be qualified to certify election systems in any state. Certification by an accredited lab is mandatory for all states. See **52 USC 20971(a)(2)**.[1]
3. Oversee the certification of the election systems in the states that choose to use the EAC as their certifying agent.

### 2.2    New Mexico Law

**NMSA 1-9-7.4** defines the roll of the Secretary of State and the choices of the New Mexico legislature regarding compliance with HAVA. Section A of this statute requires that the Secretary of State oversee the certification of the election system in New Mexico, meaning New Mexico has elected not to use the EAC as its certifying agent.[2] The statute also states that the election system ***shall*** be certified to the latest VVSG ***adopted*** by the EAC. The state also states that the election system ***shall*** be decertified if at any time the election system is found to be out of compliance with state statute or the latest ***adopted*** version of the VVSG.

---

[1] codes.findlaw.com/us/title-52-voting-and-elections/52-usc-sect-20971.html

[2] www.sos.state.nm.us/wp-content/uploads/2021/10/NM-Election-Handbook-SOS.pdf

## 3    NEW MEXICO'S ELECTION SYSTEM IS CERTIFIED TO THE WRONG STANDARD

On May 28, 2021, the SOS office sent a letter to Dominion Voting Systems requesting evidence of certification of the election system and version of software being used to tabulate votes in New Mexico. The letter states:

*"While VVSG 2.0 was adopted by the EAC in February 2021, the EAC has not yet certified any independent voting system testing laboratories (VSTLs) to test and certify voting systems to these new standards. We understand that the National Institute of Standards and Technology (NIST) is in the process of developing the test processes and procedures for VSTLs. After these are adopted, the VSTLs will be required to earn accreditation with the EAC to test voting systems to the new VVSG 2.0 standards. Since this effort is likely to take some time, we plan to review our current voting systems based upon the previously adopted standards. Once the EAC has testing and certification procedures in place for VVSG 2.0, we will initiate a new voting system certification initiative."* (Letter included as **Reference 1**).

However, at the time this letter was written by the SOS's office, the EAC had a statement on their website representing that the NIST had, in fact, already completed development of their test procedures and the EAC was ready to accept applications for testing labs to become accredited to the new standard (see **Figure 1**).[3]

https://www.eac.gov/voting-equipment/voluntary-voting-system-guidelines

**1,961 captures**
27 Mar 2017 - 28 Nov 2022

# VVSG 2.0 Implementation Next Steps

### Voting System Test Lab (VSTL) accreditation

- The new National Voluntary Lab Accreditation Program (NVLAP) handbook 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 for lab accreditation has been published: https://nvlpubs.nist.gov/nistpubs/hb/2021/NIST.HB.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.pdf

- EAC and NVLAP held a workshop with VSTLs in February to review changes to the new handbook and address any questions and concerns.

- The EAC is prepared for VSTL accreditation for VVSG 2.0, however, it is up to the labs on when to apply for accreditation.

**Figure 1. Screenshot from EAC website**

The EAC has since removed these statements from their website, possibly because of public outcry over the failure of governments and the election system companies to timely implement the new adopted standards. The new standards have several significant advancements in voting standards, and according

---

[3] web.archive.org/web/20220502182858/https://www.eac.gov/voting-equipment/voluntary-voting-system-guidelines

to the EAC "...*are desperately needed with improved cybersecurity, accessibility, and usability requirements. The VVSG 2.0 also supports various audit methods supporting software independence to confirm the accuracy of the vote and increase voter confidence...*

*The major updates included in the VVSG 2.0 are the following:*

- *Improved cybersecurity requirements to secure voting and election management systems associated with the administration of elections.*
  - *Software independence*
  - *Requires systems to be air-gapped from other networks and disallows the use of wireless technologies*
  - *Physical security*
  - *Multi-factor authentication*
  - *System integrity*
  - *Data protection*

- *Interoperability*
  - *Ensures devices are capable of importing and exporting data in common data formats*
  - *Requires manufacturers to provide complete specifications of how the format is implemented*
  - *Requires that encoded data uses a publicly available method...*
- *Other Changes*
  - *Ballot secrecy*
  - *Improved auditability...*
- *Manuals*
  - *Penetration testing*
  - *Component testing pilot program..."* [4]

Many of the criticisms that have arisen since the controversial 2020 General Election are partially addressed by the updated standard – especially disallowing the use of wireless technologies, multi-factor authentication, penetration testing to identify system vulnerabilities, and improved auditability. The public is justifiably concerned that the current standard being applied to their voting machines is older that the smartphone and does not allow for the many vulnerabilities presented by modern technology.

It appears that the original intention of the EAC was to begin implementing the VVSG 2.0 version in 2021. However, the voting machine companies appear to have a desire to slow-walk the implementation of the new standard. ES&S, one of the three major election system vendors, states on their website: "full VVSG 2.0 systems will be submitted for testing soon after the 2024 general elections." [5]

There is a huge disconnect between New Mexico state law and the intentions of the election system testing labs and vendors. State law requires the election system comply with the latest EAC standard at the time of **adoption** which occurred in February 2021. However, it appears that the labs and vendors

---

[4] www.eac.gov/news/2021/02/10/us-election-assistance-commission-adopts-new-voluntary-voting-system-guidelines-20

[5] www.essvote.com/faqs/vvsg-2-0-faq/

have no interest in complying with the standard **_until after the 2024 election_**, even though the industry has been aware of the new standard since the inception of its development in 2015.

**NMSA 1-9-7.4** is clear: "A voting system that does not comply with all requirements in the Election Code and the most recent voluntary voting system guidelines adopted by the United States election assistance commission **_shall be decertified for use in this state_**."


## 4     DOMINION VOTING SYSTEM IS NOT CERTIFIED

The previous section describes why the election system in New Mexico must be decertified because it does not conform to the latest EAC adopted standard. Supposing that issue did not exist, the election system must be decertified for other reasons because the testing lab hired by the SOS to certify the Dominion Voting system was not legally able to do so.

To prove their certification, Dominion Voting Systems pays a testing lab to run a series of tests on their tabulators and election management system to determine if they meet federal standards. The testing lab writes a "test report" with its findings, and that report is used by the SOS to show the equipment meets federal standards.

ProV&V was the testing lab chosen by Dominion. Their accreditation certificate from the EAC is included as **Reference 2**. Note that the expiration date of their accreditation was February 24, 2017:



*Effective Through*

February 24, 2017

**Figure 1. Expiration of ProV&V's Accreditation (see Reference 2)**


The cover page for the test report for the Dominion Voting System version used in New Mexico is included as **Reference 3**. Note that the date the test report was published was August 24, 2017 – six months after the expiration of the lab's accreditation:



Approved by: _Wendy Owens_  8/24/17

**Wendy Owens, VSTL Program Manager**

**August 24, 2017**

**Figure 2. Date of Test Report for Dominion Voting Systems (see Reference 3)**

This means that ProV&V improperly conducted the testing of New Mexico's election system since they were not accredited when they were testing the system. Both Dominion and New Mexico election officials failed to do due diligence to ensure ProV&V was accredited when they were hired.  The test report should never have been accepted as it is illegal and invalid.

This lapse in accreditation wasn't even noticed by the election system vendors, the testing labs, the EAC, or any elected officials for *four years.* On March 10, 2020, the president of ProV&V wrote a letter to the EAC asking to get reaccredited (**Reference 4**). It took the EAC *eleventh months* to respond and re-accredit ProV&V (**Reference 5**). *The entire certification process for one of our most important national assets – the election system – was allowed to completely lapse for five years.*

There is no profession or industry in existence who would not face serious consequences for a similar breach in a process meant to protect the American people. Improperly providing services or manufacturing products where a certification, license, or accreditation is supposed to be in place would lead to jail time, fines, and loss of careers for anyone else. But when the election system vendors, the EAC, and election officials failed to maintain the lawful certification structure for the election system, they have faced no consequences whatsoever. Neither have they made any effort to remedy this serious lapse which affected most of the states in the country. This gross negligence on the part of the EAC, testing labs, and election system vendors breaks trust, destroys voter confidence, and should not be tolerated.

By law, the election system must be decertified for use in this state as it was never properly certified. The serious lapse in the entire oversight structure should cause the New Mexicans and the legislature to think very hard about the wisdom of outsourcing oversite of our election system to the SOS, EAC, and machine vendors.  As things stand, hand counting paper ballots within individual counties would restore trust in the election system that the current structure has lost.


## 5      EPOLLBOOKS ARE NOT CERTIFIED OR EVEN CERTIFIABLE

The electronic pollbooks/ballot printing system (epollbooks) also require certification. The epollbooks are provided by two companies: Automated Election Services and ROBIS. The certification situation for them is even worse than for the Dominion tabulators.  The test report the SOS claims certifies the epollbooks and ballot printers is dated December 1, 2011:



**Figure 3. Test Report (see Reference 6)**

The problem with the eleven-year-old test report is that *the software on the epollbooks is updated multiple times per year*. The epollbook vendor confirmed that the software used in New Mexico is

automatically distributed over the internet to all the epollbooks when it becomes available like a web-based application used on smartphones.

There is no possible way that the SOS can claim that the ePollbooks and ballot printing systems are certified if they have gone through dozens of iterations of software since they were last tested. The VVSGs explicitly state "After a system has completed initial certification testing, further examination of the system is required if modifications are made to hardware, software, or telecommunications."[6] No state can legally use any product in their election system that is automatically updated over the internet without testing and buy-in from individual jurisdictions.

In addition to being uncertifiable, the ePollbooks are extremely vulnerable because they are internet connected. By monitoring the ePollbooks, it would be possible to determine who has cast a ballot, estimate the outcome, and determine which votes could be borrowed from those who haven't yet voted. The official ballots could also be obtained through this system and printed illegally.

By law, the ePollbooks must be decertified for use in this state as they are not certifiable. New Mexico must return to paper pollbooks as was the common practice just a few years ago.

## 6    THE STATE'S OWN POST-ELECTION AUDITS PROVE DOMINION TABULATORS FLIP VOTES

State and federal law allow for a maximum of error in election machines of 1 in 125,000 votes, or 0.0008%. This error rate is based on accuracy that had already been achieved using scanning technology in the early 2000's when the federal code governing electronic voting was written. It is an achievable goal.  However, based on the post-election audits performed by the New Mexico SOS, our machines come nowhere near meeting this limit.

The post-election audits performed by the SOS involve selecting a limited number of counties, and a limited number of precincts within those counties. Ballots from those selected precincts are pulled, and a few of the races on them are hand counted. Then those ballots are run through a tabulator and the results of the hand count are compared to the tabulator count. *In every one of the post-election audits, tabulators were found to miscount and flip votes.*

**Table 1** shows a summary of the results of the Risk Limiting Audits (RLA) performed after every election since 2012. [7] The "Number of Errors" in the table are the number of errors made by the machines on this tiny subset of ballots that were examined across the state.

### Table 1. Summary of Official Risk Limiting Audits Since 2012

| Election | Number of Errors | Number of Times Error Exceeds the Legal Limit |
|---|---|---|
| 2012 General | 77 | 266 |
| 2014 General | 4 | 101 |
| 2016 General | 5 | 118 |
| 2018 General | 52 | 318 |
| 2020 General | 116 | 168 |

---

[6] www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf, Section 4.3.3

[7] www.sos.state.nm.us/voting-and-elections/voter-information-portal/election-audits-2/

Based on the allowable error rate and the extremely small number of ballots included in the post-election audits – the audits must show zero error to meet state and federal law. But from the table, even the extremely limited RLAs performed by the SOS consistently show error rates hundreds of times higher than are allowable by law, but the SOS has made no effort to determine why these errors are occurring.

The machines do not meet the minimum accuracy requirements of the election code and must be decertified as a matter of law.

## 7    CONCLUSIONS

Polls consistently show that a solid majority of Americans have lost faith in the election system. This loss of faith is understandable given the failures of the SOS, EAC, and election system vendors to comply with state and federal law put in place to protect the sacred voices of the American people. Rather than admit their failures and take steps to rectify the negligent oversight, election officials and vendors have chosen instead to gaslight the American people and tell them their concerns are baseless.

This is a public crisis that must be addressed. The law gives the remedy: the electronic election system must be decertified.  They must be replaced with a well-designed, local hand count overseen within individual counties.  Hand counting procedures are already accepted by the SOS and are used on a subset of ballots in every election.  We must use these procedures to count all the ballots.

REFERENCE 1



STATE OF NEW MEXICO
**MAGGIE TOULOUSE OLIVER**
SECRETARY OF STATE

May 28, 2021

Melissa Romero
Dominion Voting Systems
melissa.romero@dominionvoting.com

**Re: Recertification of Voting Systems**

Dear Ms. Romero:

Pursuant to Section 1-9-7.4(A) NMSA 1978, the SOS is required to review for recertification each voting system already in use in the state in the year following a presidential election. All certified voting systems are required to be tested by an independent authority and comply with all requirements in the Election Code and the most recent voluntary voting system guidelines (VVSG) adopted by the United States Election Assistance Commission (EAC).

While VVSG 2.0 was adopted by the EAC in February 2021, the EAC has not yet certified any independent voting system testing laboratories (VSTLs) to test and certify voting systems to these new standards. We understand that the National Institute of Standards and Technology (NIST) is in the process of developing the test processes and procedures for VSTLs. After these are adopted, the VSTLs will be required to earn accreditation with the EAC to test voting systems to the new VVSG 2.0 standards. Since this effort is likely to take some time, we plan to review our current voting systems based upon the previously adopted standards. Once the EAC has testing and certification procedures in place for VVSG 2.0, we will initiate a new voting system certification initiative.

According to the Election Code, a "voting system" includes the equipment and peripherals used for casting and counting votes as well as the equipment and peripherals used for printing or marking ballots. The full legal definition of voting system can be found in Section 1-9-1(B) NMSA 1978.

To begin the testing and certification process required for recertification, we request that you submit the following information to our office no later than June 14, 2021:

1. The voting system and version that is being submitted for recertification.
2. A description of any modification to a hardware or software component or configuration of the voting system since the last time the system was certified for use in New Mexico, if applicable.
3. A description of how the system meets all of the applicable voting system requirements included in the New Mexico Election Code (see enclosures).

Page 2 of 2

4. A copy of the most recent VSTL report and proof of compliance on the system eligible for recertification.  The report provided must come from an EAC accredited test laboratory.
5. Description of your transition plan to become certified to VVSG 2.0, if applicable.

If you intend to have multiple system models or firmware versions recertified, please submit a separate application for each system.  Enclosed for your convenience is a copy of the requirements for voting systems outlined in Article 9 of the Election Code.

Upon completion of an examination of all recertification materials, the SOS may require additional information, testing, or inspection as deemed necessary to comply with the recertification requirements in statute.  After the SOS has completed a full review of all required information, the SOS shall make a written report and post the report and recertification materials on the SOS website for a mandatory 21-day public comment period.

Following the period of public comment, the SOS shall submit the reports and any public comments to the Voting System Certification Committee (VSCC) for their consideration and to make a recommendation to the SOS for recertification of the voting systems.

If you have questions or require any further information regarding the re-certification process, please contact me at Mandy.Vigil@state.nm.us.

Sincerely,

Mandy Vigil
State Elections Director

Enclosures: As stated



REFERENCE 2

United States Election Assistance Commission

## Certificate of Accreditation

### Pro V&V, Inc.
### Huntsville, Alabama

is recognized by the U.S. Election Assistance Commission for the testing of voting systems to the 2005 Voluntary Voting Systems Guidelines under the criteria set forth in the EAC Voting System Testing and Certification Program and Laboratory Accreditation Program. Pro V&V is also recognized as having successfully completed assessments by the National Voluntary Laboratory Accreditation Program for conformance to the requirements of ISO/IEC 17025 and the criteria set forth in NIST Handbooks 150 and 150-22.

Effective Through

February 24, 2017

Date: 2/24/15

Acting Executive Director, U.S. Election Assistance Commission

EAC Lab Code: **1501**

REFERENCE 3



# Test Report

**Dominion Voting Systems**
**Democracy Suite (D-Suite) System**
**Version 5.4-NM**
**Certification Testing**

Approved by: _____

*For*

**Michael Walker, VSTL Project Manager**

Approved by: _Wendy Owens 8/24/17_

**Wendy Owens, VSTL Program Manager**

**August 24, 2017**

*v. TR-01-02-DVS-016.01*

REFERENCE 4



Pro V&V, Inc.
6705 Odyssey Drive, Suite C
Huntsville, AL 35806

March 10, 2020

Jerome Lovato, Testing and Certification Director
U. S. Election Assistance Commission
Voting System Testing and Certification Program
1335 East West Highway, Suite 4300
Silver Spring, MD 20910

**Re: Letter of Agreement**

Dear Mr. Lovato,

The undersigned representative of Pro V&V, Inc.(hereinafter "Laboratory"), being lawfully authorized to bind Laboratory and having read the EAC Voting System Test Laboratory Program Manual, accepts and agrees on behalf of Laboratory to follow the program requirements as laid out in Chapter 2 of the Manual. Laboratory shall meet all program requirements as they relate to NVLAP accreditation; conflict of interest and prohibited practices; personnel policies; notification of changes; resources; site visits, notice of law suits; testing, technical practices and reporting; laboratory independence; authority to do business in the United States; VSTL communications; financial stability; and recordkeeping. Laboratory further recognizes that meeting these program requirements is a continuing responsibility. Failure to meet each of the requirements may result in the denial of an application for accreditation, a suspension of accreditation or a revocation of accreditation.

Sincerely,

Jack Cobb, President
Pro V&V, Inc. Laboratory Director
256.713.1111
jack.cobb@provandv.com



**U.S. ELECTION ASSISTANCE COMMISSION**
*633 3rd St. NW, Suite 200*
*Washington, DC 20001*

REFERENCE 5

**FROM:**     Jerome Lovato, Voting System Testing and Certification Director

**SUBJECT:**  Pro V&V EAC VSTL Accreditation

**DATE:**      1/27/2021

---

Pro V&V has completed all requirements to remain in good standing with the EAC's Testing and Certification program per section 3.8 of the Voting System Test Laboratory Manual, version 2.0:

> ***Expiration and Renewal of Accreditation.*** *A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation. VSTLs in good standing shall renew their accreditation by submitting an application package to the Program Director, consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. VSTLs in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5.*

Due to the outstanding circumstances posed by COVID-19, the renewal process for EAC laboratories has been delayed for an extended period. While this process continues, Pro V&V retains its EAC VSTL accreditation.

REFERENCE 6

# Test Report

## State of New Mexico Ballot on Demand Testing Program

**Test Report Rev 03**

December 1st, 2011

Prepared for:

| Client Name | *Robis Elections* |
|---|---|
| Governing Organization | *State of New Mexico* |

Prepared by:



216 16th St.
Suite 700
Denver, CO  80202
303-575-6881
www.SLIGlobalsolutions.com



NVLAP LAB CODE 200733-0

Accredited by the National Institute of Standards and
Technology (NIST) National Voluntary Lab Accreditation
Program (NVLAP), and accredited by the Election
Assistance Commission (EAC) for VSTL status.

I, <u>Erin Clements</u> state and affirm that the statements and facts presented within the document package marked as Exhibit A. Titled as "Certification Lapses" attached to the Petition for Declaratory Judgement are to the best of my knowledge true and correct. My affirmation is limited to the Document package marked Exhibit A. Package Exhibit A contains 15 pages including this statement page.

_____ Date <u>12/13/2022</u>

Address <u>2251 La Paloma, Las Cruces, NM 88011</u>